Abbey E. BLATT, Plaintiff,

v.

MARSHALL AND LASSMAN (Formerly Known as Marshall, Lassman and Company), a Partnership, Louis V. Marshall and Joseph I. Lassman, Defendants.

No. CV 85–1317.

United States District Court,
E.D. New York.

May 1, 1986.

---

Levine & Robinson, by Carl S. Levine, Mitchel Field, N.Y., for plaintiff.

Javits, Robinson, Brog, Leinwald & Reich, P.C., New York City, for defendants.

WEXLER, District Judge.

Plaintiff Abbey Blatt, a certified public accountant, commenced this action against defendants Louis Marshall and Joseph Lassman, and their accounting firm, Marshall & Lassman, for breach of a fiduciary duty and failure to comply with the terms of an employee benefit plan, as required by the Employee Retirement Income Security Act of 1974, Pub.L. 93–406, (codified as amended in scattered sections of 29 U.S.C.) ("ERISA"). The parties have cross-moved for summary judgment. Rule 56(c), Fed.R. Civ.P.

### I.

The following facts are undisputed. Abbey Blatt was initially hired in 1968 as an employee by the accounting firm of Marshall, Dym, and Lassman. He was made a partner[1] in 1977 and continued his association with the firm, now known as Marshall & Lassman, until October 3, 1983, when he left the firm. During the time he was associated with Marshall & Lassman, Blatt participated in a pension plan sponsored by the American Institute of Certified Public Accountants (the "AICPA Plan" or the "Plan"). This pension plan, which is fully vested, is administered by a Retirement Committee and insured by the Mutual Insurance Company of New York ("MONY"). Marshall & Lassman, as well as its predecessor partnerships, have also participated in the AICPA Plan.

In recognition the dispersed nature of employment in the accounting profession, the AICPA Plan provides an opportunity for employees of separate accounting firms to pool their funds toward retirement. Participation in the AICPA Plan is open to the employees of accounting firms that meet the Plan's requirements and eligible firms that wish to offer the AICPA Plan to their employees must apply to the Plan's Retirement Committee. In the application, the employer must elect to a number of matters concerning the scope of the Plan's applicability to the firm and its employees.[2] The application must also contain "[a]n agreement of the applicant to furnish all information necessary for the Plan's convenient administration...." AICPA Plan, § 3.2(1)(h) (Plaintiff's Exhibit 4 at 25). If the firm is accepted, then the employes who wish to take advantage of the Plan can become participants. Section 8 of the Plan states that an employee terminates participation in the Plan upon termination of the employee's relationship with the em-

---

1. The legal issue of whether Blatt was a partner is not before this Court, and the use of the term "partner" is purely descriptive and not a conclusion of law. The Court assumes the familiarity with a prior Order in this Court on this question. *Blatt v. Marshall and Lassman,* CV 85–1317 (E.D.N.Y. Jan. 8, 1986) (slip op. at 4 n.1).

2. In the application, the applying firm must: (1) set the limitation and the percentage to be applied to the earnings of each participant in computing the contributions to be made under the plan, § 3.21(1)(a); (2) set the number of years of service with the employer to be eligible to participate (must be at least three years), § 2.3(1)(b); (3) set the rate of contributions to be made by employee participants (can not be less than 1% but no more than 10% of the employee's earnings), § 3.2(1);

(4) set the frequency of contributions, § 3.2(1)(f); (5) set the equivalencies for an employee's hours of service, § 3.2(1)(i); (6) decide whether to adopt the AICPA Plan's minimum contribution provision, § 3.2(1)(j); (7) decide whether to put limitations on allocations, § 3.2(1)(k); and (8) decide whether contributions shall be made by participants who are not employees, § 3.2(1)(*l*). AICPA Plan, § 3.2(1)(a), (b), (e), (f), and (i)–(*l*), Plaintiff's Exhibit 4 at 25–28. The AICPA Plan also allows employers to change any of these elections, but the charges must be in writing and filed with the Retirement Committee before a specified date if they are to be effective for that tax year. § 2.3(1).

ployer accounting firm. Distribution of benefits to the employee can commence only upon MONY's receipt of a notice of termination.

With respect to the employer's role in the Plan, the employer is required to submit cash contributions to MONY at least once a year and is required to pay entry fees and a share of administrative expenses, as needed. Employers are held responsible for compliance with the Plan's requirements concerning contributions. Employee contributions and assets under the Plan never revert to the employer. The Plan allows an employer to suspend payments for up to one year, and an employer may, subject to the conditions of the Plan, transfer to another pension plan.

Not long after Blatt left his former partners, he decided that he wanted to recover the money he had paid into the AICPA Plan and, in due course, learned that no monies could be released until the firm had executed and sent to MONY a Notice of Change Certificate reflecting Blatt's status as a former member of the firm. Shortly thereafter, on January 13, 1984, Blatt wrote Marshall & Lassman, asking them to execute the aforementioned document. Despite repeated requests and the commencement of both an action in New York State court,[3] and this lawsuit, the document was not executed until May 17, 1985.[4]

In the Complaint, Blatt alleges that defendants breached their statutory duties as fiduciaries by refusing to execute the Notice of Change Certificate upon his request. Defendants move for summary judgment on the grounds that defendants are not fiduciaries within the meaning of ERISA, 29 U.S.C. § 1002(21)(A), and are, therefore, exempt from liability. 29 U.S.C. § 1104. Plaintiff opposes the motion, arguing that defendants are ERISA fiduciaries, and

cross moves for summary judgment on the issue of liability.

The threshold issue in this case is whether defendants are fiduciaries under ERISA. If they are not, then there is no liability and the Complaint must be dismissed. If they are, then the second inquiry is whether the failure to execute a Notice of Change Certificate constituted a breach under the statute.

## II.

In 1974, Congress enacted ERISA to protect individual pension rights and promote the expansion of private retirement plans. H.R.Rep. No. 533, 93d Cong., 2d Sess. 1–2, *reprinted in* 1974 U.S.Code Cong. & Ad. News. 4639–40. *Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 634 (W.D. Wis.1979). One of the legislation's critical elements was the uniform regulation of fiduciary conduct and, as enacted, ERISA set out specific standards of conduct for fiduciaries, Pub.L. 93–406, § 404, (codified as amended at 29 U.S.C. § 1104), prohibited certain transactions between fiduciaries and others, § 406, 29 U.S.C. § 1106, and imposed liability for a breach of fiduciary duty, § 409, 29 U.S.C. § 1109.

Under the statute:

a person is a fiduciary with respect to a plan to the extent

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets;

(ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys

3. *Marshall, Lassman & Company v. Blatt,* No. 2689/83 (Sup.Ct.N.Y.Ct. filed Oct. 31, 1983).

4. The Notice of Change Certificate is a form, 4″ by 6″, printed by MONY as the Plan's administrator, and used to verify various changes in a participant's status. Aside from the space on the form allocated for notifying MONY of a

participation in the AICPA Plan, there is an equal amount of space for name changes, redesignation of beneficiaries, and miscellaneous changes. At the bottom of the form, there is a signature line for both the participant and the employer. Plaintiff's Exhibit 5.

or other property of such plan, or has any authority or responsibility to do so; or

(iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). The term "fiduciary" also includes delegees of fiduciary duties. § 1105(c)(1)(B) allows that a plan "may expressly provide for procedures ... (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (...) under the plan." 29 U.S.C. § 1105.

ERISA's legislative history reveals that Congress sought to codify the principles of fiduciary responsibility as they had developed in the law of trusts, S.Rep. 127, 93d Cong., 2d Sess. 27, *reprinted in* 1974 U.S. Code Cong. & Ad.News 4865, and indicated that a broad, functional definition of fiduciary was being adopted. The House Conference Report, H.R.Rep. 1280, 93d Cong., 2d Sess., states that "the definition of fiduciary includes persons who have authority and responsibility with respect to the [management of a plan, disposition of its assets, or administration of the plan], regardless of their formal title." 1974 U.S. Code Cong. & Ad.News 5103. *See also* H.R.Rep. 533, 93d Cong., 2d Sess. at 10, *reprinted in* 1974 U.S.Code Cong. & Ad. News. 4649 ("A fiduciary is one who occupies a position of trust and confidence. As defined by the Act, a fiduciary is a person who exercises any power of control, management or disposition with respect to monies or other property of an employee benefit fund, or who has authority or responsibility to do so.").

Judicial interpretations have been consistent with congressional intent. Courts examine the role that a person plays in the management or administration and assess the extent of discretionary authority, all without undue reference to formal titles. *See, e.g., Amato v. Western Union International, Inc.,* 773 F.2d 1402, 1416–17 (2d

Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986) (employers will be considered a fiduciary when they function as plan administrators but not when they conduct business unregulated by ERISA); *Anderson v. Ciba-Geigy Corporation,* 759 F.2d 1518, 1522 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985) (corporate executive deemed a fiduciary of a company-run ERISA plan though he was not named as a fiduciary); *Donovan v. Mercer,* 747 F.2d 304 (5th Cir.1984) ("fiduciary" should be defined broadly, without reference to titles, and by considering the authority exercised over an employee benefit plan); *Donovan v. Bierwith,* 680 F.2d 263, 271–72 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982) (corporate officers who are also trustees of the firm's pension plan are fiduciaries within the meaning of ERISA); *Eversole v. Metropolitan Life Insurance Co., Inc.,* 500 F.Supp. 1162, 1165 (C.D.Cal.1980) (insurance company with the authority to grant or deny pension claims held an ERISA fiduciary).

■ Despite Congress' intent that "fiduciary" be defined broadly to protect pension rights, the courts recognize that in some instances, a person or entity is not an ERISA fiduciary. The mere fact that a defendant has some connection to or involvement in a pension plan does not confer fiduciary status. For example, a defendant may fall outside the scope of § 1002(21)(A) if he or she lacks the requisite discretionary authority or responsibility with respect to a pension plan. *See, e.g., Austin v. General Life Insurance Company,* 498 F.Supp. 844, 846 (N.D.Ala.1980) (not every insurer is an ERISA fiduciary; fiduciary status turns upon the terms of the pension agreement); *Boyer v. J.A. Majors Company Employees' Profit Sharing Plan,* 481 F.Supp. 454, 458 (N.D.Ga.1979) (corporate employer not an ERISA fiduciary when pension plan was managed and administered jointly by a separate committee and a trustee bank). Furthermore, a party may perform important and necessary functions, but will not be deemed a fiduciary

because these acts are ministerial and not discretionary. *E.g., Robbins v. First American Bank of Virginia,* 514 F.Supp. 1183, 1190–91 (N.D.Ill.1981) (bank not a fiduciary when it acted as a servicing agent and was never involved in either the administration or management of the fund or its investment decisions).

■ Interpretative regulations issued by the Department of Labor have further qualified the definition of "fiduciary." 29 C.F.R. § 2509.75–8 (1985). These regulations make clear that a person who performs purely ministerial functions for an employee benefit plan within a framework of policies, interpretations, rules, practices, and procedures is not a fiduciary.

### III.

■ Turning to the facts of this case, the Court concludes that defendants are not fiduciaries under the AICPA Plan. First, defendants do not render any investment advice, either for a fee or otherwise, and have no control over the assets of the Plan, which, as the Plan makes clear, never revert to the employer. At best, an employer sends contributions to MONY as an agent of the participant. 29 U.S.C. § 1002(21)(A)(ii).

Second, defendants have no discretionary role in the administration of the AICPA Plan. By the terms of the Plan the employer has almost no discretion in the Plan's administration. The Plan specifically requires the employer to furnish to MONY all information necessary to the Plan's administration. Although MONY or the Retirement Committee may delegate administrative functions to an employer, there is no evidence that this has occurred here. The employer clearly administers the Plan with respect to each of its employees, but even here, the employer's role is limited largely to communication and contact with the participant employee on behalf of MONY. To the extent that the Plan gives defendants any administrative authority, the Court concludes that these activities are largely

ministerial. The employer may set the frequency of contributions and their method of collection from the participant, but the Plan requires that the contributions be in cash, and sets limits on the size of contributions. Contributions on behalf of an owner-employee are even more strictly regulated. The Plan also requires that, in advance of actual eligibility, an eligible employer must notify prospective participants of the Plan's availability, and specifies that the employer must provide the employee with the necessary forms for participation. The Plan further requires that the employer supply a detailed description of the Plan to all eligible employees. *See* 29 C.F.R. § 2509.75–8 (1985). Furthermore, beyond the text of the Plan, plaintiff has not put forth any evidence to show that Marshall & Lassman retained any discretionary administrative authority beyond the four corners of the AICPA Plan. On the other hand, however, one of the plaintiff's own exhibits, the Notice of Change Certificate, tends to indicate that MONY's administrative control extended as far as the forms used by the employer in the Plan's administration.[5] 29 U.S.C. § 1002(21)(A)(iii).

Third, defendants have no discretionary authority with respect to the management of the Plan or the disposition of its assets. The Plan has no provision for employers to control, disperse, or invest any of the assets of the fund. Employers have no involvement in the choice of investments, investment advisors, plan managers, fiduciaries, administrators, or members of the Retirement Committee. Moreover, viewed from the perspective of an accounting firm, the Plan is essentially a take it or leave it proposition. The functioning of the Plan as a whole leaves an employer little management discretion. Aside from the limited election provisions available to an eligible firm, nearly all of the Plan's provisions are set by the Retirement Board, without any provision for input by the employer. Moreover, the Retirement Committee is free to make changes in the Plan

---

5. See footnote 4.

unilaterally and without the consent of any employer. 29 U.S.C. § 1002(21)(A)(i).

Plaintiff argues that the election provisions available to the employer,[6] create a fiduciary relationship between the employer and the employee/participant. The Court disagrees. ERISA does not contemplate the imposition of a fiduciary duty on an employer because the employer selects from among several, pre-determined options.

Nor is this case controlled by the recent decision of the Third Circuit in *Genter v. Acme Scale & Supply Co.*, 776 F.2d 1180 (3d Cir.1985). In *Genter*, an employee could increase his insurance coverage in one of two ways, either under the terms of the pension plan when his salary exceeded a certain level, or outside the terms of the pension plan. The second method, known as the "mainstream method," was known only to a few employees and involved increases in policy coverage before the date specified in the pension plan. In holding the employer liable under ERISA as a fiduciary, the Third Circuit stated that the "mainstream method" gave the employer a degree of discretionary authority not provided for in the plan. 776 F.2d at 1184–85. In this case, however, there is no provision in the AICPA Plan for any similar employer discretion and there is no evidence that Marshall & Lassman exercised any discretion over claims or coverage outside the terms of the Plan.

The Court is aware that a restrictive interpretation of the term "fiduciary" may conflict with legislative purpose and, would allow a fiduciary to transfer important responsibilities to an immunized administrative entity. *Brink v. DaLesio*, 496 F.Supp. 1350, 1375 (D.Md.1980), *rev'd on other grounds*, 667 F.2d 420 (4th Cir.1981), (citing *Eaton v. D'Amato*, 581 F.Supp. 743, 746 (D.D.C.1980)). In the instant case, however, the employer's functions are ministerial and not within § 1002(21)(A). The AICPA Plan restricts the employer to a limited series of choices concerning the scope of plan and, implicitly requires the employer to perform a series of ministerial administrative functions. The Court's reading of § 1002(21)(A) leads it to the conclusion that the AICPA Plan does not place upon an employer such as Marshall & Lassman the degree of trust and confidence that ERISA seeks to regulate. *See Robbins v. First American Bank of Virginia*, 514 F.Supp. 1183 (N.D.Ill.1981).[7]

The Court is not unmindful of the consequences of this statutory interpretation. Defendants' refusal to execute the Notice of Change Certificate may well have denied plaintiff of access to funds that were rightfully his. Nevertheless, plaintiff is not without a remedy. Defendants' conduct may have well given rise to a claim for damages under state law[8] and there is a ready forum for the adjudication of that claim, namely, the state court litigation already pending between these parties.[9]

## IV.

Accordingly, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. The Clerk of the Court is directed to enter judgment for defendants.

SO ORDERED.

---

6. See footnote 2.

7. The result in this case could well be different if the AICPA Plan were an employer-administered plan. *See Russell v. Massachusetts Mutual Life Insurance Company*, 722 F.2d 482 (9th Cir.1982), *rev'd on other grounds*, ⎯ U.S. ⎯, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

8. Marshall & Lassman's refusal to execute the Notice of Change Certificate may have constituted a conversion. *See* W. Prosser, *The Law of Torts* § 15 (1971).

9. Because the Court holds that defendants are not ERISA fiduciaries, and enters summary judgment for them, the parties are therefore implicitly estopped from seeking to remove state court proceedings to this Court on the basis of a federal question, namely, the breach of a fiduciary duty under ERISA. 28 U.S.C. §§ 1331, 1444; 29 U.S.C. § 1132 e, f. The parties are, of course, not foreclosed from removing the state proceedings to this Court on any other basis not inconsistent with the removal statute.