**Carolyn L. JORDAN, etc., Plaintiff,**

v.

**RELIABLE LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 88–AR–0543–S.**

United States District Court, N.D. Alabama, S.D.

Sept. 8, 1988.

As Amended Sept. 9, 1988.

---

James J. Thompson, Jr., Hare, Wynn, Newell and Newton, Birmingham, Ala., for plaintiff.

Dan H. McCrary, Balch & Bingham, Birmingham, Ala., Robert C. von Ohlen, Jr., pro hac vice, Lord, Bissell & Brook, Chicago, Ill., for Reliable Life Ins. Co.

## MEMORANDUM OPINION

ACKER, District Judge.

Defendant, Reliable Life Insurance Company, has moved to strike the jury demand that accompanied a complaint originally filed in the state court by plaintiff, Carolyn L. Jordan, as executrix under the will of James I. Jordan, deceased. The action was brought on a group policy of accidental death insurance written by Reliable. The policy designated Mr. Jordan's estate as beneficiary in the event of Mr. Jordan's accidental death. The policy contained an exclusion for death occurring in an airplane in which the insured was serving as pilot or member of the flight crew. The only disputed issue of fact is a simple one, namely, whether or not Mr. Jordan, who admittedly died in an air crash, was himself acting as a member of the crew at the time of the crash. The case was removed from the state court to this court by Reliable on the basis of diversity and the alleged existence of a federal question.

If a question arises as to whether or not Mrs. Jordan, the beneficiary under this insurance policy, is entitled to a jury trial, it does so from the fact that the policy was a group policy covering certain salaried officials of Vulcan Materials Company as part of an employee benefit package allegedly governed by the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* (ERISA). Mr. Jordan was a salaried employee of Vulcan Materials. Reliable contends that Mr. Jordan's suit is an ERISA claim for benefits and that, therefore, the Eleventh Circuit's *Chilton v. Savannah Foods and Industries, Inc.*, 814 F.2d 620, 623 (11th Cir.1987), precludes trial by jury because *Chilton* precludes trial

by jury of any claim involving an ERISA Plan.

### The Pertinent Facts

In order to ferret out the facts upon which Reliable's motion turns, the court submitted certain interrogatories to Reliable. Some of those interrogatories and Reliable's answers are as follows:

1. Name the person or persons who made the decision to deny plaintiff's claim.

ANSWER: Ronald Bove.

2. Describe precisely the relationship between the person or persons named in answer to interrogatory No. 1 above and Reliable Life Insurance Company.

ANSWER: Ronald Bove is the Vice President of Claims for National Accident Insurance Underwriters, Inc. (NAIU) which is the managing underwriter for the Reliable Life Insurance Company with respect to policy nos. 1037–ADALP–02 and 1037–ABAKF–02.

3. Name and give the address of the "plan administrator" under the alleged ERISA plan which defendant claims is here involved.

ANSWER: Vulcan Materials Company
P.O. Box 7497
Birmingham, Alabama 35233.

4. Name and give the address of any and all "fiduciaries" under the alleged ERISA plan which defendant claims is here involved.

ANSWER: Under Plaintiff's ERISA claim, Vulcan Materials Company, P.O. Box 7497, Birmingham, Alabama 35223 is a fiduciary. If a "fiduciary" under ERISA is interpreted to be anyone who exercises any discretionary authority with regard to paying a claim under policy nos. 1037–ADALP–02 and 1037–ABAKF–02, the Reliable Life Insurance Company, Webster Groves, Missouri, and National Accident Insurance Underwriters, Inc., 500 Park Boulevard, Itasca, Illinois 60143–2692 could also be considered "fiduciaries."

5. What part, if any, did Vulcan Materials Company play in making the decision not to pay plaintiff's claim?

ANSWER: Vulcan Materials played no role in the decision not to pay plaintiff's claim.

6. What effect, if any, would payment of this claim have on Vulcan Materials Company or on any employee benefit plan of Vulcan Materials Company?

ANSWER: None, to defendant's knowledge, as a result of this claim.

\* \* \* \* \* \*

8. Is it defendant's contention that all group insurance policies issued by it covering employees of particular employers are governed by ERISA?

ANSWER: No.

9. If defendant's answers to the interrogatory next above is "no," set forth in detail how defendant makes the distinction between group policies as to whether or not they are governed by ERISA?

ANSWER: A group policy would be covered by ERISA if all of the following conditions are met:

(1) The policy is part of a "employee welfare benefit plan" or a "employee pension benefit plan" within the meaning of sections 3(1) or 3(2)(A), respectively, of the Employee Retirement Income Security Act of 1974 (ERISA). (29 U.S.C. §§ 1002(1) & (2)(A)).

(2) The plan of which the policy is a part is established or maintained by: (i) an employer engaged in commerce or in any industry or activity affecting commerce; (ii) an employee organization or organizations representing employees engage [sic] in commerce or in any industry or activity affecting commerce; or (iii) both (i) and (ii) (29 U.S.C. § 1003).

(3) The plan of which the policy is a part is not excluded from ERISA's coverage by virtue of section 4(b) thereof (29 U.S.C. § 1003(b)), i.e., the plan is not a governmental plan or a church plan with respect to which no election has been made under section 410(d) of the Internal Revenue Code, the plan is not maintained solely for the purpose of complying with applicable workmen's compensation laws

or unemployment compensation or disability insurance laws, the plan is not maintained outside the United States primarily for the benefit of the persons substantially all of whom are nonresident aliens, and the plan is not an unfunded excess benefit plan within the meaning of section 3(36) of ERISA (29 U.S.C. § 1002(36)).

If the above three requirements are met with respect to a policy, ERISA will generally govern the policy since under section 514(a) of ERISA, the provisions of Title 1 of ERISA will supersede "any and all State laws insofar that they may now or hereafter relate to any employee benefit plan ..."

\*      \*      \*      \*      \*      \*

12. Does Reliable Life Insurance Company contend that the burden of proof is on the plaintiff to prove that defendant or anyone else, abused its discretion in denying this alleged ERISA claim?

ANSWER: Plaintiff has the burden of proving that defendant was arbitrary or capricious in interpreting the plan with regard to this claim. In addition, it is defendant's position that the facts of this case so clearly establish that James I. Jordan was piloting or serving as a member of the crew of the flight in question that under any arguably relevant standard of review, policy nos. 1037–ADALP–02 and 1037–ABAKF–02 do not provide coverage for this claim.

\*      \*      \*      \*      \*      \*

14. Is plaintiff's claim an equitable claim or a law claim or some other kind of claim?

ANSWER: Plaintiff's Complaint alleges that her claim is brought pursuant to the Employment Retirement Income Security Act of 1974. Courts examining this issue characterize such claims as equitable in that they involve an alleged entitlement to benefits and require an interpretation of the terms of the plan.

15. Is the only factual dispute between the parties whether or not plaintiff's decedent was a passenger at the time of his death?

ANSWER: Investigation revealed that James I. Jordan's death resulted from injuries sustained while he was piloting or serving as a member of the crew of an aircraft. For that reason, the claim was denied. At this time, defendant does not believe there are any material factual issues in dispute.

16. Was the insurance coverage here involved a part of a larger benefit package or plan afforded by Vulcan Materials Company to its employees or to some portion of its employees?

ANSWER: Defendant Reliable Life has no knowledge regarding the benefit package offered by Vulcan Materials Company to its employees other than the Accidental Death Group Insurance policy at issue in this litigation.

In addition to these answers to the court's interrogatories, Reliable, in its answer to Mrs. Jordan's complaint, says:

### ANSWER

1. Defendant Reliable Life denies that James I. Jordan was "riding as a passenger" in an aircraft on November 8, 1986 as it approached Dannelly Field, near Montgomery, Alabama.

2. Defendant Reliable Life admits that James I. Jordan suffered fatal injuries as a result of the crash of his aircraft on November 8, 1986.

3. Defendant Reliable Life admits that James I. Jordan was employed by Vulcan Materials Company.

4. Defendant Reliable Life admits that James I. Jordan was not acting within the scope of his employment at the time of the aircraft crash.

5. Defendant Reliable Life admits that it issued an Accidental Death Group Insurance Policy to Vulcan Materials Company subject to the conditions, limitations, exclusions and other terms contained therein.

6. Defendant Reliable Life admits that James I. Jordan was an insured person under Vulcan Materials Company Accidental Death Group Insurance Policy, subject to the conditions, limitations, ex-

clusions and other terms contained therein.

7. Defendant Reliable Life denies that Exhibit "A" attached to plaintiff's amended complaint is the insurance policy issued to Vulcan Materials Company.

8. Defendant Reliable Life admits that plaintiff has made a demand for an accidental death benefit in connection with the death of her husband in the aforesaid aircraft crash.

9. Defendant Reliable Life denies that it refused to comply with the terms of the policy, and avers that no benefits are payable to plaintiff under the terms of the policy.

10. Defendant Reliable Life admits that it has made no payment to plaintiff.

11. Defendant Reliable Life denies that it has breached any contractual duty to plaintiff or plaintiff's decedent, James I. Jordan.

12. Defendant Reliable Life denies the allegations contained in plaintiff's amended complaint except to the extent they are specifically admitted herein.

*First Affirmative Defense*

Defendant Reliable Life alleges that the Accidental Death Group Insurance Policy issued to Vulcan Materials Company does not provide coverage for loss caused by, contributed to or resulting from injury sustained while piloting or serving as a member of the crew of any aircraft. Defendant Reliable Life alleges that plaintiff's claim is for loss which was caused by, contributed to or resulting from James I. Jordan piloting or serving as a member of the crew of the aircraft in which he sustained fatal injuries, and therefore defendant Reliable Life has no duty or obligation to plaintiff under the terms of the policy.

This answer to the complaint interposes no defense peculiar to ERISA. For instance, Reliable fails to assert that denial of the claim was not "arbitrary and capricious." In effect, the answer constitutes no more than a reliance upon the policy language excluding coverage in the event Mr. Jordan was piloting the airplane or serving as a member of the crew at the time of his death. The answer appears to set up a classic dispute of those facts material to a simple claim of breach of contract.

This "Accident Insurance Plan for Salaried Employees," which, in reality, is a policy of group insurance issued by Reliable to certain Vulcan Materials employees, contains, *inter alia*, the following provisions:

§ 5.3 LEGAL ACTIONS. No action at law or equity will be brought to recover on the Policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the claim filing requirements and procedures outlined in the General Benefit Information section of this book. No such action will be brought after the expiration of three years after the time proof of loss is required to be furnished.

§ 5.6 CONFORMITY WITH STATE STATUTES. If any time limitation of the Policy with respect to giving notice, filing proof of loss or commencing an action at law or in equity is less than that permitted by the law of the Participant's resident state at the time the Policy is issued, such limitation will be extended to agree with the minimum period permitted by such law.

These provisions, contained in this insurance policy issued by Reliable long after ERISA had been enacted by Congress, can have no purpose if all state laws applying to the enforcement of the policy terms are preempted by ERISA. Obviously, Reliable did not think *then* what it asserts *now*.

In both the insurance policy and all other documents produced by Reliable or by Mrs. Jordan, assuming *arguendo* that any document can be deemed to constitute part of an "employee benefit plan," the requirements of 29 U.S.C. § 1133 are conspicuous by their absence. That statutory provision, integral to the ERISA whole, states:

*Claims procedure*

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

Nothing in the documents reflects any opportunity for a review of Reliable's denial of Mrs. Jordan's claim except by the filing of a legal action.

Apparently Reliable wants the protections and the narrowing of the issues arguably afforded it by ERISA without itself undertaking all obligations imposed by ERISA. Unless an "employee benefit plan" substantially complies with the ERISA requirements, it cannot be treated as a Plan for the purpose of limiting the Plan's exposures. Not only does 29 U.S.C. § 1133 mandate administrative appellate procedures for reviewing initially denied claims, but at 29 C.F.R. § 2560.503–1, the Secretary of Labor has promulgated minimum requirements for such "employee benefit plan" procedures. Nothing submitted in this case shows compliance, either by Reliable or by Vulcan Materials with § 2560.503–1.

## The ERISA Quicksand

The ERISA quicksand is fast swallowing up everything that steps in it or near it. This morass serves as the stage for a theater of the absurd. If Reliable had issued this very policy of insurance directly to its insured, instead of to Vulcan Materials for the benefit of the insured and others as members of an employee group, the widow would clearly enjoy the Seventh Amendment's guarantee of trial by jury. Except for alleged ERISA preemption, plaintiff here would clearly have a common law cause of action for a simple breach of contract, the result depending upon a jury resolution of disputed material facts.

The background of this court's ponderings on ERISA may be found in *Whitt v. Goodyear Tire & Rubber Co.,* 676 F.Supp. 1119 (N.D.Ala.1987); in *Amos v. Blue Cross–Blue Shield of Alabama,* 681 F.Supp. 1515 (N.D.Ala.1988); in *McKinnon v. Blue Cross–Blue Shield of Alabama,* 691 F.Supp. 1314 (N.D.Ala.1988); and in *Bishop v. Osborn Transportation, Inc.,* 687 F.Supp. 1526 (N.D.Ala.1988). In *Whitt,* this court did an abrupt "about-face" and followed *Chilton* only because *Whitt* was clearly an ERISA case, because *Chilton* contains very broad language of prohibition against jury trial in ERISA cases, and although *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), subsequently stated a principle of statutory construction contradicting the *Chilton* rationale, *Tull* was *not* an ERISA case. *See Whitt,* 676 F.Supp. at 1132. In *Whitt,* this court was torn between its duty to dance to the beat of the nearer drum sounded by the Eleventh Circuit in a case directly on point, and this court's duty to dance to the beat of the Supreme Court's louder, more powerful drum in a non-ERISA case dealing more broadly with the Seventh Amendment's guarantee of a jury trial in any congressionally-created cause of action in which the creating statute is silent as to the right to a jury trial of a traditionally jury-type claim. In *Whitt* this court lost its nerve! Nevertheless, this court predicts that when the issue addressed by the Eleventh Circuit in *Chilton* does reach the Supreme Court, whether or not the Supreme Court grants the pending petition for certiorari in *Daniel v. Eaton Corp.,* 839 F.2d 263 (6th Cir.1988), which seeks to present the question, trial by jury of ERISA causes of action that provide traditionally *legal* remedies will be confirmed by the Supreme Court. Meanwhile, however, this court still feels tenuously bound by *Chilton* in *ERISA-governed cases.* Mrs. Jordan's case then, presents only one question: *"Is the complaint here dependent upon ERISA for its viability?"*

It is impossible to analyze the jury trial issue in the ERISA context without discussing the overlapping and regularly reap-

pearing question of the extent to which state law claims are preempted by ERISA and the practical effects of any such preemption. In *Daniel*, the United States Court of Appeals for the Sixth Circuit recognizes this overlapping when it says:

> Having determined that Daniel's common law claims were preempted by ERISA, we conclude that the district court properly denied Daniel's demand for a jury. Although there may be actions under ERISA in which a jury trial is proper, in actions for recovery of benefits under section 502, "there is no right to a jury trial." *Crews*, 788 F.2d 332 at 338; *Foulke*, 565 F.Supp. 882 at 883.

839 F.2d at 268.

Notably, the Sixth Circuit fails to speculate on what "actions under ERISA" may carry the right to a trial by jury. As this court reads *Chilton*, the Eleventh Circuit now believes there are no such actions.

After this court in *Amos* commented on *Belasco v. W.K.P. Wilson and Son, Inc.*, 833 F.2d 277 (11th Cir.1987), and on *Bishop v. Osborn Transportation, Inc.*, 838 F.2d 1173 (11th Cir.1988), several things have transpired. First, there is now a pending petition for certiorari to the Supreme Court in *Bishop*, designed either to eliminate the doctrine of preemption or to clarify it. Second, in *Anschultz v. Connecticut General Life Ins. Co.*, 850 F.2d 1467 (11th Cir.1988), the Eleventh Circuit on August 1, 1988, without mentioning or attempting to reconcile *Bishop* and *Belasco*, holds:

> Where otherwise applicable, *ERISA preempts all state law.*

850 F.2d at 1469 (emphasis in original). In *Anschultz* it was undisputed that the Plan was an "employee benefit plan" within the meaning of ERISA. The expression by the Eleventh Circuit in *Anschultz* is more categoric and positive than the expression by the Sixth Circuit in *Daniel.*

It is impossible to know for sure at present whether or not the Eleventh Circuit or the Supreme Court agrees with any or all of the following six recent decisions bearing on ERISA as they may affect Reliable's motion.

## The Third Circuit

In *Airco Industrial Gases, Inc. v. Teamsters Health & Welfare Pension Fund of Philadelphia*, 850 F.2d 1028 (3d Cir.1988), decided on June 30, 1988, the United States Court of Appeals for the Third Circuit, speaking persuasively through Hon. A. Leon Higginbotham, Jr., deals with an ERISA claim coupled with an action brought under the Delaware law of unjust enrichment. The defendants argued that because of ERISA the district court lacked subject matter jurisdiction over the Delaware claim. The plaintiff argued that the Delaware claim was, in truth and in fact, a claim under the "federal common law of ERISA." This argument is reminiscent of the rationale in *Belasco* in which the Eleventh Circuit recognizes what it calls the conversion of a state cause of action into an ERISA claim, federalizing it.

The Third Circuit holds in *Airco:*

> The distinction between subject matter jurisdiction and cause of action was recognized by the district court when deciding the question of whether an implied cause of action under ERISA exists. *Airco I*, 618 F.Supp. at 947. The district court, moreover, made an explicit finding that it "ha[d] jurisdiction under 28 U.S.C. § 1331 over actions arising under federal common law." *Id.* at 950 n. 5. It then proceeded to articulate a cause of action under the federal common law of ERISA, in the nature of an equitable action for unjust enrichment. *Id.* at 950.

\*     \*     \*     \*     \*     \*

Regarding "actions arising under ... the laws of the United States," 28 U.S.C. § 1331 (1982), this Court has stated that this provision of section 1331 can be invoked "if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition." *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir.1974).

Under the *Lindy* test, "a distinctive policy of a federal statute," 501 F.2d at

1369, is, in this case, ERISA's preemption of most state law actions in the pension field. 29 U.S.C. § 1144(a) (1982). Furthermore, this "distinctive policy" of ERISA does require the application of federal legal principles for its disposition in this case, that is, federal common law principles. *See Illinois v. City of Milwaukee, Wisconsin,* 406 U.S. 91, 100 [92 S.Ct. 1385, 1391, 31 L.Ed.2d 712] (1972) (§ 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin."); *Northeast Dept. ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 149 (3d Cir.1985) ("Northeast Department") (Becker, J., joined by Sloviter, J.) (subject matter jurisdiction exists pursuant to § 1331, to determine a question that implicates ERISA). Finally, the issue presented in this case is one "of central concern" to ERISA, notwithstanding the district court's finding that no statutory cause of action existed. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 26–27 [103 S.Ct. 2841, 2855, 77 L.Ed.2d 420] (1983). Thus, while the district court did not elaborate on why subject matter jurisdiction exists, we agree with its conclusion that section 1331 conferred upon it subject matter jurisdiction to determine the existence of a federal common law cause of action based on unjust enrichment.

850 F.2d at 1033, 1034 (footnotes omitted). Although the *Airco* rationale differs somewhat from the *Belasco* rationale, the end result is the same.

### Central District of California

On June 8, 1988, the District Court for the Central District of California, Hon. Robert M. Takasugi, decided *So. Cal. Meat Cutters Unions v. Investors Research,* 687 F.Supp. 506 (C.D.Cal.1988). The court holds that a non-fiduciary who acts in concert with an admitted ERISA fiduciary is outside the reach of ERISA preemption and is subject to the state rules which regulate behavior of non-ERISA fiduciaries. 687 F.Supp. at 510. In other words, the state laws expose such persons or entities to claims of fraud and intentional infliction of emotional distress. Judge Takasugi says:

> Whether ERISA preempts state law claims for nonfiduciaries is a question of first impression for this circuit. Other courts that have considered this question have gone both ways.

Plaintiffs rely on three cases to support their conclusion that ERISA does not regulate nonfiduciary conduct: *Munoz v. Prudential Ins. Co. of America,* 633 F.Supp. 564 (D.Colo.1986); *Blatt v. Marshall and Lassman,* 633 F.Supp. 712 (E.D.N.Y.1986); and *Issacs v. Group Health, Inc.,* 668 F.Supp. 306 (S.D.N.Y. 1987). *Munoz* involved a nonfiduciary administrator of a self-funded employee benefit plan, and the court there found that ERISA did not preempt the plaintiff's state common law claims against the nonfiduciary defendant. The court in *Munoz* stated, in pertinent part, that:

> I do not find it to be Congress' intent to preempt state common law liabilities where there is no regulation to fill the void. In this vein, the state common law invoked by plaintiff does not denigrate the objectives of ERISA because regulation of nonfiduciary behavior is not an ERISA objective.

633 F.Supp. at 571. As is discussed below, it appears that the *Munoz* court's interpretation of ERISA is the more reasonable....

\* \* \* \* \* \*

Courts which have held that nonfiduciary behavior, if in conjunction with misconduct of an ERISA fiduciary, is regulated by ERISA, have not only taken the liberty to make a distinction where no indication of such a distinction exists in the statute; that the statute intended to cover some, but not all, kinds of nonfiduciary behavior; but, these courts have also presumed that the regulation for nonfiduciary misconduct would be the same as that for fiduciary misconduct. It appears that although *the preemptive clause has been interpreted broadly, the purpose of the preemptive clause is to provide uniform federal laws and*

access for those causes of action for which ERISA provides remedies. Furthermore, this court can find no indication that Congress intended to regulate only certain nonfiduciary behavior while not expressly providing a remedy for any nonfiduciary misconduct. Accordingly, to carry out the overriding purpose behind ERISA, protecting employee benefit plans, and their beneficiaries and participants, § 1109 must necessarily outweigh § 1144. This conclusion also provides for a consistent approach regarding nonfiduciary misconduct.

687 F.Supp. at 507, 509–510 (emphasis supplied).

This court thoroughly agrees with Judge Takasugi, but is not 100% sure that the Eleventh Circuit will agree.

### Northern District of Illinois

On June 17, 1988, the District Court for the Northern District of Illinois, Hon. Marvin E. Aspen, decided *Armbruster v. Benefit Trust Life Ins. Co.*, 687 F.Supp. 403 (N.D.Ill.1988). Judge Aspen there deals with a complaint seeking medical benefits. The case was removed from the state court on the basis of the alleged existence of a federal question, which the removing defendants claimed was an ERISA claim. The plaintiffs in their state court action "did not elect to frame their lawsuit as an ERISA action," but Judge Aspen nevertheless found the removal proper. 687 F.Supp. at 405. However, he went on to assert the following propositions, ending with a citation to the Eleventh Circuit's recent *Belasco* opinion:

> In the twin cases of *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Supreme Court held that any cause of action brought under the guise of a state law claim charging improper denial of benefits under an employee benefits plan covered by ERISA is preempted and displaced by ERISA. The Court explained the crucial distinction between preemption and displacement. Generally, a de-

fendant may set forth the affirmative defense of federal preemption to a common law claim, but preemption alone does not provide federal question jurisdiction over the claim. *A common law action displaced by federal statute,* on the other hand *arises under* that statute and is therefore removable to federal court regardless of how the plaintiff framed the action. *Id.* at 1546–47; *Belasco v. W.K.P. Wilson & Sons, Inc.,* 833 F.2d 277, 282 (11th Cir.1987).

687 F.Supp. at 405 (emphasis supplied).

Judge Aspen granted defendants' motion to dismiss only because plaintiffs had not alleged that the decision to deny benefits was "arbitrary and capricious" as Judge Aspen believes is required by ERISA. This seemingly harsh result was ameliorated by the fact that Judge Aspen expressly permitted plaintiffs to amend within thirty days to restate their causes of action in proper ERISA terms. 687 F.2d at 406. Ostensibly, plaintiffs Armbruster can put forward some, if not all, of the previously dismissed claims by clothing them in ERISA language and by citing the *federal* ERISA as their basis instead of *state* law.

### Western District of Arkansas

On June 27, 1988, the District Court for the Western District of Arkansas decided *Board of Trustees of Cedar Rapids Pediatric Clinic, P.A., Pension Plan v. Continental Assurance Co.,* 590 F.Supp. 792 (W.D.Ark.1988). Without expressly disagreeing with the holding in *Armbruster,* Hon. Morris Sheppard Arnold apparently disagrees with Judge Aspen. Judge Arnold holds that state law claims for breach of contract, breach of fiduciary duty, fraud, negligence and conspiracy are examples of claims that can be brought under ERISA, and that although they must be dismissed as *state* law claims because of the doctrine of ERISA preemption, they may proceed as ERISA claims. Reminiscent again of the Eleventh Circuit in *Belasco?* This court feels constrained to ask: What, as a practical matter, does "ERISA preemption" actually mean?

*District of Massachusetts*

On July 11, 1988, the District Court of Massachusetts decided *Quigley v. UNUM Life Insurance Co.*, 688 F.Supp. 80 (D.Mass.1988). In that case, Hon. Andrew A. Caffrey faced a purported state law claim filed against an insurance company for unpaid annuity payments. The simple complaint sounded in contract. The annuity had been purchased through a participating contribution to a group pension plan. Plaintiff's demand for a jury was challenged by the insurance company under ERISA. The insurance company also claimed that the state claim was preempted.

Judge Caffrey, while conceding that ERISA preempts state claims which bear some real relation to an "employee benefit plan," proceeds to hold:

Despite the expansive interpretation accorded the ERISA preemption provision, the scope of 29 U.S.C. § 1144 is not entirely unlimited. "Some state actions may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Airlines, Inc.*, 463 U.S. [85] at 100, n. 21, 103 S.Ct. [2890] at 2901, n. 21 [77 L.Ed.2d 490]. For example, the garnishment of plan benefits to satisfy a claim against a plan participant was recently held not preempted by ERISA. *Mackey v. Lanier Collections Agency & Service, Inc.*, —— U.S. ——, ——, 108 S.Ct. 2182, ——, 100 L.Ed.2d 836 (1988).

The Court believes that the present action may be characterized as one so tenuously related to an ERISA plan that the claims are not preempted. The sole connection of the Anesthesia Associates pension plan to this litigation is that the plan purchased and held these policies in trust for the benefit of Dr. Quigley until his retirement. The dispute in this case does not involve the plan and the plaintiffs do not claim that any term of the pension plan was violated. The resolution of this dispute requires only an interpretation of the insurance and annuity contracts issued by Unum and a determination as to the propriety of Unum's failure to disclose to its insured which table it used to calculate the annuity payment. Litigation of these issues will not, in effect, result in state regulation of the pension plans contrary to the purposes of ERISA. The concern which motivated the enactment of the ERISA preemption provisions, the threat of inconsistent and conflicting state regulation of ERISA plans, is not implicated if this action is allowed to go forward. *See Fort Halifax Packing Co., Inc. v. Coyne*, —— U.S. ——, ——, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987).

In support of its preemption argument, Unum argues that because it has authority to grant or deny claims for benefits under the policies, it is a fiduciary of the Anesthesia Associates pension plan whose obligations are governed exclusively by ERISA. Although many courts have held that an insurer may be considered an ERISA fiduciary when it has discretion to grant or deny claims under an employee benefit plan, all of the cases that have come to the Court's attention involve medical plans where differences of opinion quite often arise as to the scope of coverage for particular injuries. *See, e.g., McLaughlin v. Connecticut General Life Insurance Co.*, 565 F.Supp. 434, 441 (N.D.Cal.1983); *Benvenuto v. Connecticut General Life Insurance Co.*, 643 F.Supp. 87, 90 (D.N.J.1986).

In the present case, eligibility for benefits involves little room for discretion. Under the life insurance policies issued to the plan, the insured was eligible for benefits upon death or upon the maturity of the policies. Unum was required to make no judgment calls akin to those called for by the claims review process of a health insurer. *The provision of contractual benefits alone will not create fiduciary obligations under ERISA where an insurer exercises little or no discretion in relation to an ERISA plan. Austin v. General American Life Insurance Co.*, 498 F.Supp. 844, 846 (N.D.Ala.1980). *The Court rules that Unum was not a fiduciary subject to the constraints of ERISA and thus, the*

*plaintiffs' claims are not preempted for this reason.*

688 F.Supp. at 82–83 (footnotes omitted) (emphasis supplied).

Judge Caffrey's language can apply with equal force to the coverage which here was provided by Reliable to Mr. Jordan.

### District of Maryland

In *Vogel v. Independence Federal Savings Bank,* 692 F.Supp. 587 (D.Md.1988), Hon. Norman P. Ramsey of the District of Maryland finds that extra-contractual damages are recoverable in an ERISA suit alleging willful misconduct. Judge Ramsey recognizes the marked differences between ERISA's treatment of vested pension plans and its treatment of welfare plans such as those which provide medical or accident benefits. He says:

[C]ongress included welfare benefit plans within the scheme of ERISA, but did not provide an extensive array of mandatory provisions as it did for pension plans. The implication here is that parties retain a greater degree of freedom to contract between themselves as to what benefits will be provided under welfare plans, when and how they will be provided, what rights the respective parties have under the plans, as well as the right to negotiate other provisions with the parties determining what the express terms are. Because they are included in ERISA, determination of the meaning of their terms as well as the means for their enforcement have become a matter of federal law, but this law will only be flushed out for welfare benefit plans as decisions are issued developing a federal common law to govern them. The statute provides the framework but courts must provide substantive law.

\*       \*       \*       \*       \*       \*

Finally, defendants assert that plaintiffs' prayers for extracontractual and punitive damages should be dismissed. Whether or not these two types of damages are recoverable in an ERISA action remains an unsettled issue of law. At least one judge in this district has ruled that punitive damages cannot be recov-

ered at all. *See Trogner v. New York Life Ins. Co.,* 633 F.Supp. 503 (D.Md. 1986). In part, this result occurs because Congress, when it drafted the enforcement sections, expressly granted equitable relief as a remedy but did not similarly grant legal relief. 29 U.S.C. § 1132(3). The extent to which a party is entitled to legal relief under the statute is still being debated in the caselaw.

\*       \*       \*       \*       \*       \*

Following [*Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) ], at least two federal courts have allowed recovery of extracontractual damages and punitive damages under ERISA. *See Smith v. ABS Industries, Inc.,* 653 F.Supp. 94 (N.D.Ohio 1986) (allegation of willful violation of plan is sufficient to state claim for punitive damages); and *James A. Dooley Assoc. Emp. Ret. Plan v. Reynolds,* 654 F.Supp. 457 (E.D.Mo.1987) (punitive damages may be necessary where plaintiff can prove a malicious breach of duty). At this point, therefore, the issue remains unsettled.

\*       \*       \*       \*       \*       \*

This section [29 U.S.C. § 1140], plaintiffs assert, creates the statutory equivalent of a tortious interference with contract action and extracontractual and punitive damages ought to be found recoverable for violations, making federal law compatible with the action as it has developed at common law, or else there would be no viable means to enforce it.

Having reviewed the parties' arguments, the relevant caselaw, as well as the statute, the Court is persuaded that extracontractual damages are recoverable in an ERISA suit alleging willful misconduct or violations of § 1140's prohibition against interference with protected rights. These damages in effect represent special damages and "are the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence in the particular case, that is, by reason of special circumstances or

conditions." Black's Law Dictionary 354 (5th ed. 1979). They could include, for example, recovery for mental distress or for money loss above and beyond the contractual terms.

Allowing such damages is in line with the Congressional purpose of "establishing standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans, and ... providing for appropriate remedies [and] sanctions." 29 U.S.C. § 1001(b). They also comport well with the express imposition of a fiduciary duty of care and liability for its breach effected by sections 1104 and 1105. It is a basic conclusion in trust law that courts "will give to the beneficiaries of a trust such remedies as are necessary for the protection of their interests." 3 A. Scott, *Law of Trusts* § 199 and 1638 (1967). While trust law remedies are equitable in nature, they include provisions for monetary damages. *See* G. Bogert and G. Bogert, *Law of Trusts and Trustees* § 862 (2d ed. 1982); and *Restatement (Second) of Trusts* §§ 199, 205 (1959). Thus, ERISA's provisions contain an implicit basis for extracontractual damages. See Note, Participant and Beneficiary Remedies Under ERISA; Extracontractual and Punitive Damages are *Massachusetts Mutual Life Insurance Co. v. Russell,* 71 Cornell L. Rev. 1014 (1986). *Id.*

When Judge Ramsey says "at this point the issue remains unsettled," he is guilty of making the understatement of August, 1988.

### Conclusion

■ These cases do not sound as though other federal courts are construing ERISA as narrowly as does the Eleventh Circuit in *Chilton* or in *Bishop.* Without any reconciliation of these and other ERISA cases either by the Eleventh Circuit or by the Supreme Court, this court proceeds in the instant case into uncharted seas without a sextant and without a compass. Were this court more timid, it would relax in favor of the arguable *stare decisis* provided by

*Chilton,* which denies trial by jury in ERISA cases in broad language. However, this court does not feel guided by *Chilton* in this case, not because of *Tull,* but because of the peculiar facts of the instant case that distinguish it from *Chilton* and that make this case uniquely a case for the jury resolution of a simple factual dispute in a contract case.

■ The mere fact that Mrs. Jordan invoked ERISA in the complaint which she filed in the state court does not constitute a waiver by her of the prerequisites for creating an ERISA-controlled claim. She and her attorneys were simply mistaken in invoking ERISA. The fact that she called a racehorse a donkey should not hobble her. Her well respected lawyers would surely have asked for the attorney's fees allowed by ERISA if they had really been convinced that Mrs. Jordan's claim depends upon ERISA for its viability. While lawyers overlook other things occasionally, only rarely do they overlook attorney's fee provisions.

■ From the information here furnished by Reliable, Vulcan Materials Company, Mr. Jordan's employer, was both the "plan administrator" and the "plan sponsor," except that Reliable has not produced the written instrument required by 29 U.S.C. § 1102 for the creation of an "employee benefit plan." It is impossible to tell from the record in this case whether or not the subject insurance policy is even a part of an "employee welfare benefit plan," particularly when the "Accident Insurance Plan for Salaried Employees" attached to the complaint does not contain the requisites set out in 29 U.S.C. § 1102. For instance, the document does not "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." For instance, the document does not "provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan." For instance, the document does not "describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the

plan." For instance, the document does not "provide a procedure for amending such plan and for identifying the persons who have authority to amend the plan." For instance, the document does not "specify the basis on which payments are to be made to and from the plan." The document only constitutes the usual and customary form of a group policy of accident insurance. This is *Quigley v. UNUM Life Ins. Co.* all over again.

In its answers to interrogatories, Reliable admits that not all group insurance policies purchased by or through an employer are governed by ERISA. This means, of course, that it is incumbent upon Reliable to bring this particular group policy of insurance within ERISA's embrace.

It is interesting that Reliable does not claim that Vulcan Materials, the "plan administrator," is a necessary and indispensable party. *See Shaw v. International Assn. of Machinists and Outerspace Workers Pension Plan*, 563 F.Supp. 653 (D.C.Cal.1983), *aff'd*, 750 F.2d 1458 (9th Cir.1984), *cert. denied*, 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1984). The "plan administrator," which is *the prime*, if not the only, fiduciary under ERISA is, or must be, a party. Reliable equivocates on whether or not *it* is even a "fiduciary." If Reliable is a nonfiduciary, the reasoning of *So. Cal. Meat Cutters Unions* is automatically implicated, and Reliable is exposed to a state claim.

The ERISA provision for "civil enforcement," 29 U.S.C. § 1132(d) requires, *inter alia:*

> Service of summons, subpoena, or other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan.

Mrs. Jordan has not sued or served either a "trustee" or the "plan administrator," and the defendant that she has sued does not seem to mind.

Reliable also admits that payment of this claim in full would have no effect whatsoever on any "employee benefit plan" of Vulcan Materials Company. One of the major purposes of ERISA is to protect employee benefit plans from being adversely affected. As stated in *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983):

> Some state actions may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law "relates to" the plan.

103 S.Ct. at 2901, n. 21.

The statutory basis for the preemption doctrine is found at 29 U.S.C. § 1144(a), which provides in pertinent part:

> [T]he provisions of this subchapter and subchapter III of this chapter shall *supersede* any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1103(a) of this title and not exempt under section 1103(b) of this title.

(emphasis supplied).

Many cases follow *Shaw* in holding that actions which have no appreciable effect on an "employee benefit plan" do not "relate to" that plan and therefore are not "superseded," i.e., preempted.

An additional reason for denying preemption in this case is found in 29 U.S.C. § 1003(b), which provides for certain exceptions to ERISA coverage. One exception is for cases where "such plan is an excess benefit plan (as defined in section 1002(36) of this title) and is unfunded." 29 U.S.C. § 1003(b)(5). A reading of 29 U.S.C. § 1002(36) reflects that "excess benefit plan" is defined as "a plan maintained by an employer solely for the purpose of providing benefits for certain employees in excess of the limitations on contributions and benefits imposed by section 415 of Title 26 on plans to which that section applies, without regard to whether the plan is funded to the extent that a separable part is funded." For aught appearing in this record, this Vulcan Materials accident policy is for the purpose of providing benefits for "certain employees in excess of the limitations on contributions and benefits imposed by section 415 of Title 26 on plans to which that section applies," and is therefore exempt from ERISA.

Reliable takes the flat-footed position that it can be liable only if it is determined to have been "arbitrary and capricious" in denying Mrs. Jordan's claim and that it cannot be adjudged "arbitrary and capricious" when it only believed its own investigators who reported that the insured was a member of the airplane's flight crew at the time of his death. Either Reliable has made a mistake in not having already filed an airtight motion for summary judgment, or Reliable's statement of the issue and of burden of proof is correct and the courts will be reduced to being mindless "yes men" in all cases where an insurance company has any rational basis for having denied a claim made on an employer-sponsored accident insurance plan. This court cannot believe that this is what Congress had in mind when it enacted ERISA. What did Congress have in mind?

[T]he arbitrary-or-capricious standard does limit review to prevent excessive judicial intervention in *trust* operations.

*Offutt v. Prudential Insurance Co. of America*, 735 F.2d 948, 950 (5th Cir.1984) (emphasis supplied).

In this case Reliable offers nothing to prove that it was acting as a *"trustee"* when it denied Mrs. Jordan's claim. In its own answers to interrogatories, Reliable is unwilling to describe itself as a "trustee" or as a "fiduciary." It virtually concedes that ERISA is not applicable. Reliable seems to have been just another insurance company processing a claim like any other claim, and nothing more. If the congressional intention were to immunize insurance companies from liability whenever they can show some arguable reason for their refusal to pay a claim, federal district courts should have already ordered the appropriate rubber stamps. If this court is looking in the mouth of the gift horse that would allow the court to abdicate its routine responsibility, it is because there are countervailing forces called "justice" and the Seventh Amendment's guarantee of a jury trial, both of which here give this court pause.

There is a growing phalanx of courts expressing the fear that ERISA will continue to expand and to preempt everything in its meandering path. Only Congress or the Supreme Court can rescue us from the quicksand. Meanwhile, this court has paused, reflected, and concluded that Mrs. Jordan's case is not one in which she can be required to forego her traditional trial by jury.

It is appropriate to recapitulate the holdings of this court in order that there will be no misunderstanding. If, contrary to this court's belief, *Tull* does not impliedly overrule *Chilton*, and does not place the burden upon Congress affirmatively to preclude trial by jury when it legislates a new cause of action that is virtually identical to a previously recognized common law cause, then this court holds:

1. The burden of proving that Mrs. Jordan's claim is governed by ERISA is upon Reliable; and that burden is not met simply by pointing to the fact that Mrs. Jordan's complaint mentions ERISA. Plaintiff's reference to ERISA was, in this court's opinion, erroneous. ERISA preemption depends upon the actual issues presented and not upon the appellations applied to them. Calling a racehorse a donkey does not slow it down.

2. Reliable removed this case on the basis of diversity as well as on its allegation of the existence of a federal question. Because there is admitted diversity here, no jurisdictional harm is done by finding ERISA inapplicable.

3. Reliable has not met its burden of putting this case squarely under ERISA. ERISA does not control this action for the separate and several reasons above discussed. Therefore, plaintiff is entitled to a trial by jury under Rule 38(a), F.R. Civ.P.

4. The jury will *not* be charged that the burden is upon Mrs. Jordan to prove that Reliable was "arbitrary and capricious" when it denied her claim. It will be charged that the burden of proof is upon Mrs. Jordan to prove by a preponderance of the evidence that her husband was killed in a plane crash.

5. The jury will further be charged that if Mrs. Jordan meets her burden, the burden will be on Reliable to prove that the loss falls within an exclusionary clause of the policy for death while a pilot or crew member. *Fleming v. Alabama Farm Bureau Mutual Casualty Ins. Co.*, 293 Ala. 719, 722, 310 So.2d 200 (1975); *Burton v. State Farm Fire and Casualty Co.*, 533 F.2d 177, 178, *reh'g denied*, 540 F.2d 1084 (5th Cir.1976).

An appropriate separate order will be entered denying Reliable's motion to strike Mrs. Jordan's jury demand.