George **QUIGLEY**, et al., Plaintiffs,

v.

**UNUM LIFE INSURANCE CO., Defendant.**

Civ. A. No. 87–2545–C.

United States District Court, D. Massachusetts.

July 11, 1988.

MEMORANDUM

CAFFREY, Senior District Judge.

The controversy before the Court arises from the plaintiffs' grievance with the manner in which the defendant, Unum Life Insurance Company ("Unum"), calculated certain annuity payments owed to the plaintiffs' decedent, Dr. George E. Quigley, Sr. Unum has moved for summary judgment, or in the alternative, to strike the plaintiffs' jury demand. For the reasons stated below, the Court grants the defendant's motion for summary judgment.

The pertinent facts are as follows. Dr. Quigley, the plaintiffs' decedent, was an anesthesiologist practicing with a group of other doctors under the name Anesthesia Associates.[1] In 1961, Anesthesia Associates established a pension plan for its doctors and full time employees. Under the terms of the pension plan, a retiring participant was entitled to a monthly pension, guaranteed for 10 years after retirement and for life thereafter.

To fund the plan, Anesthesia Associates contributed sums which were then used by the plan's trustees[2] to purchase individual life insurance contracts for all participating employees. Five such contracts were purchased on behalf of Dr. Quigley as named insured. These policies were owned by the trustees of the pension plan and all rights and options concerning the policies were reserved by them.

Each of the policies insuring Dr. Quigley contained a provision for determining the cash value of the policy. These provided that a specified ordinary life table be used to determine the cash value of a particular policy. One policy provided that the 1941 Commissioner Standard Ordinary Table (CSO) be used to calculate the cash surrender value of the policy. The other four policies dictated that the 1958 CSO table be used.

Gerard V. Heckler, Rafferty & Polich, Cambridge, Mass., for plaintiffs.

Thomas F. Maffei, Choatl, Hall & Stewart, Robert M. Buchanan, Boston, Mass., for defendant.

1. The practice group was later incorporated under the name of "Newton Anesthesia Associates, Inc."

2. The trustees at various times included Dr. Quigley, other doctors of Newton Anesthesia Associates, and Dr. Quigley's brother-in-law, an insurance broker.

Upon his retirement, Dr. Quigley, in his capacity as trustee for the plan, surrendered the insurance policies for their cash values which all parties concede amounted to $113,525.99, a sum calculated by using the tables described above. This amount was then used to purchase a Supplementary Contract which provided Dr. Quigley with a monthly annuity of $904.00 for 10 years, and for life thereafter. Dr. Quigley received this monthly payment for 8 years until his death. It is the method used by Unum to calculate the amount of this payment that is the source of the controversy here.

The plaintiffs, Dr. Quigley's widow and son, as co-executors of his estate,[3] have asserted that Unum improperly substituted a different table to determine the amount of the monthly payment under the Supplementary Contract for the 1958 and 1941 CSO tables which, according to their view, were mandated by the life insurance policies. The plaintiffs claim that this switch resulted in a lower net return than Dr. Quigley was otherwise entitled to under the contract. Counts I and II of the complaint state a claim for breach of contract, Counts III and IV for misrepresentation based on the defendant's failure to disclose the use of a different table to Dr. Quigley, and Counts V and VI assert a claim under Chapter 93A of the Massachusetts General Laws.

The first issue presented on this motion is whether the plaintiffs' claims are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* ERISA is a comprehensive regulatory scheme which governs, among other things, employee benefit plans which are established by an employer to provide retirement income to employees. 29 U.S.C. § 1002(2)(A). The parties do not seriously dispute that the pension plan established by Anesthesia Associates is a benefit plan subject to regulation under ERISA. Rather, the parties differ on whether the specific claims asserted against the defendant here are preempted by that statute.

ERISA supersedes all state laws as they relate to employee benefit plans. 29 U.S.C. § 1144(a). In keeping with Congressional intent to establish the regulation of such plans as an exclusively federal concern, the Supreme Court has broadly construed the ERISA preemption provision as encompassing any state law that has a "connection with or reference to" employee benefit plans. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Under this broad construction, even common law claims that do not intrinsically affect ERISA plans are preempted if in application they relate to such plans. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987).

Despite the expansive interpretation accorded the ERISA preemption provision, the scope of 29 U.S.C. § 1144 is not entirely unlimited. "Some state actions may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Airlines, Inc.,* 463 U.S. at 100, n. 21, 103 S.Ct. at 2901, n. 21. For example, the garnishment of plan benefits to satisfy a claim against a plan participant was recently held not preempted by ERISA. *Mackey v. Lanier Collections Agency & Service, Inc.,* —— U.S. ——, ——, 108 S.Ct. 2182, ——, 100 L.Ed. 2d 836 (1988).

The Court believes that the present action may be characterized as one so tenuously related to an ERISA plan that the claims are not preempted. The sole connection of the Anesthesia Associates pension plan to this litigation is that the plan purchased and held these policies in trust for the benefit of Dr. Quigley until his retirement. The dispute in this case does not involve the plan and the plaintiffs do not claim that any term of the pension plan was violated. The resolution of this dispute requires only an interpretation of the insurance and annuity contracts issued by Unum and a determination as to the propriety of Unum's failure to disclose to its

---

3. Mary Quigley also asserts claims on her own behalf identical to those asserted by the estate.

insured which table it used to calculate the annuity payment. Litigation of these issues will not, in effect, result in state regulation of the pension plans contrary to the purposes of ERISA. The concern which motivated the enactment of the ERISA preemption provisions, the threat of inconsistent and conflicting state regulation of ERISA plans, is not implicated if this action is allowed to go forward. *See Fort Halifax Packing Co., Inc. v. Coyne,* ––– U.S. –––, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987).

In support of its preemption argument, Unum argues that because it has authority to grant or deny claims for benefits under the policies, it is a fiduciary of the Anesthesia Associates pension plan whose obligations are governed exclusively by ERISA.[4] Although many courts have held that an insurer may be considered an ERISA fiduciary when it has discretion to grant or deny claims under an employee benefit plan, all of the cases that have come to the Court's attention involve medical plans where differences of opinion quite often arise as to the scope of coverage for particular injuries. *See, e.g., McLaughlin v. Connecticut General Life Insurance Co.,* 565 F.Supp. 434, 441 (N.D.Cal.1983); *Benvenuto v. Connecticut General Life Insurance Co.,* 643 F.Supp. 87, 90 (D.N.J. 1986).

In the present case, eligibility for benefits involves little room for discretion. Under the life insurance policies issued to the plan, the insured was eligible for benefits upon death or upon the maturity of the policies. Unum was required to make no judgment calls akin to those called for by the claims review process of a health insurer. The provision of contractual benefits alone will not create fiduciary obligations under ERISA where an insurer exercises little or no discretion in relation to an ERISA plan. *Austin v. General American Life Insurance Co.,* 498 F.Supp. 844, 846 (N.D.Ala.1980). The Court rules that Unum was not a fiduciary subject to the constraints of ERISA and thus, the plaintiffs' claims are not preempted for this reason.

■ Having decided that the plaintiffs' claims are not preempted by ERISA, the next question is whether the statute of limitations bars their assertion under state law. The defendant contends that the limitations period on plaintiffs' claims commenced running in 1977, at the time the amount of the monthly payment was first calculated and when Dr. Quigley first began to receive the payments from Unum. The plaintiffs, on the other hand, argue that the limitations period did not begin to run until February, 1985, when the plaintiffs learned that Unum had used an annuity table different from that specified in the life insurance policies. Because this action was filed within three years of that date,[5] on September 10, 1987, plaintiffs argue that the statute of limitations is no bar.

Under Massachusetts law, the statute of limitations runs from the date of the actions giving rise to a plaintiffs' cause of action unless those actions are inherently unknowable or the defendant fraudulently concealed the cause of action from the plaintiff. M.G.L. c. 260, § 12. *See also Friedman v. Jablonski,* 371 Mass. 482, 486, 358 N.E.2d 994 (1976); *Frank Cooke, Inc. v. Hurwitz,* 10 Mass.App.Ct. 99, 106, 406 N.E.2d 678 (1980). Fraudulent concealment generally means that the defendant took some positive step to hide the plaintiff's cause of action. "In the absence of a fiduciary duty of full disclosure, the period of limitations [is] not tolled ... unless the defendant concealed the existence of a cause of action through some affirmative

---

**4.** Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

**5.** Without conceding the preemption issue, plaintiffs assumed that ERISA applied for statute of limitations purposes and therefore utilized the three year period set forth in 29 U.S.C. § 1113(a)(2).

act done with the intent to deceive." *Frank Cooke, Inc. v. Hurwitz,* 10 Mass. App.Ct. at 108, 406 N.E.2d 678. Where the defendant has fraudulently concealed the plaintiff's cause of action, or in violation of a fiduciary obligation, has failed to disclose the facts which would apprise the plaintiff of his or her legal rights, or where the cause of action is inherently unknowable, then the statute of limitations does not run until the plaintiff knows or should know of the facts giving rise to his or her cause of action. *Id.* at 106, 406 N.E.2d 678.

In the case before the Court, the act which gave rise to the plaintiffs' cause of action, the alleged switching of the tables used to calculate the annuity payment, occurred in 1977 at the time that Dr. Quigley received his first payment under the annuity contract. Unless the nature of the defendant's actions brings the case within one of the exceptions described above, the statute of limitations commenced running at that time and expired well before this action was filed.[6]

The plaintiffs have alleged no actions on the part of Unum which amount to a concealment of the fact that Unum did not use the CSO tables specified in the life insurance policies to calculate the amount of the monthly payment due under the Supplementary Contract. Indeed, the record suggests that Unum voluntarily informed the plaintiffs of the method used to calculate the annuity payment when that information was requested by plaintiff George Quigley, Jr. Nor does Unum's failure to disclose its method of calculating the benefits amount to fraudulent concealment which stayed the running of the statute of limitations. No facts are alleged which indicate that Unum had a fiduciary obligation to Dr. Quigley to disclose the table it used to calculate the payments even in the absence of an inquiry from Dr. Quigley.

Finding that the defendant did not fraudulently conceal the method it used to calculate the payment and that Unum was under no fiduciary obligation to reveal the method in the absence of an inquiry from the insured, the Court rules that this action is barred by the statute of limitations, having been filed more than six years after the cause of action accrued. The Court points out that this is not a case where the facts could not have been discovered prior to 1985. A mathematical computation using the CSO tables specified in the life policies would have indicated to any inquirer that the payments under the Supplementary Contract must have been calculated using a different method. Thus, this was not an "inherently unknowable" claim which stayed the limitations period until it was discovered. *See Lynch v. Signal Finance Corp. of Quincy,* 367 Mass. 503, 508, 327 N.E.2d 732 (1975); *Wise v. Hubbard,* 769 F.2d 1, 3 (1st Cir.1985).

Order accordingly.

---

6. The longest limitation period for any of these claims was the six years provided by M.G.L. c. 260, § 2 for the breach of contract claim.