Houston, J.
Plaintiff Efficient Management Systems, Inc. brings this action for breach of contract, violation of G.L.c. 93A, and tortious interference with advantageous relations against defendants Philip Morin and Laurence L. Moran as trustees of Truck Drivers’ Union Local Number 42 Health and Welfare Fund and Robert Marshall as trustee of the New England Teamsters and Baking Industries Fund. Defendants Morin, Moran and Marshall filed motions for summary judgment pursuant to Mass.R.Civ.P. 56. Plaintiff filed a timely opposition and similarly moved for summary judgment. For the following reasons, the defendants motions are ALLOWED in part and DENIED in part and the plaintiffs motion is DENIED.
BACKGROUND
Plaintiff Efficient Management Systems, Inc. (EMS) is a Massachusetts corporation engaged in employee benefits administration. Defendants Philip R. Morin (Morin) and Laurence L. Moran (Moran) are trustees of Truck Drivers’ Union Local Number 42 Health and Welfare Fund (Local 42 Fund). Defendant Robert Marshall is a trustee of the New England Teamsters and Baking Industries Fund (Baking Fund).
The trustees of Local 42 Fund entered into a yearly contract with EMS on or about January 10, 1991. Under the Administrative Services Agreement (Agreement), EMS was to process and administer the accounts of each of the members of the Local 42 Fund. The Agreement ran from February 1, 1991 to January 31,1992 and was amended once on January 13,1992. Under this amendment, the Agreement was renewed by the trustees of Social 42 Fund to run from February 1, 1992 until January 31, 1993. On or about July 1, 1992, the Agreement was further amended to include additional administrative functions on the part of EMS.
Between September 30, 1986 and August 1992, the Local 42 Fund experienced financial difficulties due to increasing insurance premiums. As a result of these economic considerations, the trustees entered into a contract with the trustees of the Baking Fund. Under the contract, the Local 42 Fund would cease to exist and the Baking Fund agreed to accept the former Local 42 plan participants into its own fund and to provide health care coverage to them at specified levels. The agreement between the two funds included a provision which purported to disavow all liability incurred previously by the Local 42 Fund or its trustees.
Both funds are Massachusetts trusts and employee welfare benefit plans within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA) and as amended.[2] 29 U.S.C. §1002(1) (1985 & Supp. 1995).
Following the execution of the Agreement, trustees of the Local 42 Fund notified EMS of the impending discontinuance of Local 42 Fund operations. On August 31, 1992, the trustees of the Local 42 Fund informed EMS that its services would be terminated, effective October 1, 1992. EMS returned all fund records to Local 42 Fund as requested by its trustees on or around September 30, 1992.
As a result of the above events, EMS brings this action alleging that Marshall, as trustee of the Baking Fund, breached a contract with EMS or, in the alternative, interfered with an advantageous business relationship. The action further alleges that Morin and Moran, as trustees of the Local 42 Fund, breached the Agreement by terminating it prematurely. EMS also contends that Morin and Moran misled it with regard to the impending termination of operations which occurred on September 30, 1992, thereby committing unfair and deceptive trade practices in violation of G.L.c. 93A.
Morin and Moran move for summary judgment asserting that they may not be held personally liable on the contract as trustees and any such claim is preempted under ERISA. Marshall also seeks summary judgment based upon the absence of an express or implied contract, the lack of proof of improper motive or means, and federal preemption. EMS submits its own cross-motion for summary judgment alleging the facts warrant a finding as a matter of law because there has been no ERISA preemption and a de facto merger, or, in the alternative, improper interference on Marshall’s part.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material facts and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing the nonmov-ing party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). A court will grant summary judgment to the party entitled to judgment as a matter of law if all parties have moved for summary judgment and “there is no real dispute [concerning] salient facts” or if a case only involves a question of law. Cassesso v. Comm’r of Correction, supra.
*428 ERISA explicitly preempts “any and all State laws” that “relate to any employee benefit plan...” 29 U.S.C. §1144(a). The words “relate to” have been construed broadly. Pace v. Signal Technology Corp., 17 Mass. 154, 156(1994). A state law may relate to an employee benefit plan even though it does not conflict with ERISA’s own requirements. District of Columbia v. Greater Washington Board of Trade, 113 S.Ct. 580, 583 (1992). ERISA preempts even state laws which are “a help, not a hindrance,” to the plans, and regardless of whether there is a “comfortable fit” between a state’s law and ERISA’s overall aims. McCoy v. MIT, 950 F.2d 13, 18 (1st Cir. 1991), cert. denied, 504 U.S. 910 (1992). Under this expansive construction, “even common law claims that do not intrinsically affect ERISA plans are preempted if in application they relate to such plans.” Quigley v. Unum Life Ins. Co., 688 F.Supp. 80, 82 (D.Mass. 1988), citing Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41 (1987).
Congress adopted the sweeping preemption clause with the intention of protecting the interests of the plan beneficiaries. Attorney General v. Travelers Ins. Co., 385 Mass. 598, 602 (1982). The goal was to ensure that employee benefit plans would not face “conflicting or inconsistent State and local regulation.” Shaw v. Delta Airlines, 463 U.S. 85, 105 (1983).
I. Claims Against Marshall
In determining whether a law relates to ERISA, the court will weigh whether the state law claims will either “ ‘determine whether any benefits are paid’ . . . [or] ‘directly affect the administration of benefits under the plan.’ ” Pace v. Signal Technology Corp., 417 Mass. at 159 quoting Cuocco v. NYNEX, Inc., 722 F.Supp. 884 (D.Mass. 1989). If either prong of the inquiry is answered in the affirmative, then the claims do relate to ERISA and are therefore preempted. Id. The United States Supreme Court has extended preemption even to laws whose effect on a plan is only indirect. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990).
Congress has set certain requirements for a transfer such as that which occurred between the Local 42 Fund and the Bakery Fund. 29 U.S.C. §1411. This suggests that the impact of these types of inter-fund transfers was a concern of the members of Congress. The claims proffered in this case are considered with this congressional concern in mind.
A. Breach of Contract
EMS seeks the enforcement of a contract which directly relates to the administration of the Local 42 Fund and the Baking Fund against Marshall. The Agreement clearly places the burden on EMS to oversee the day-to-day administration of the employee welfare benefit plan.[3] In order to hold Marshall and the Baking Fund liable for breach of contract, this court must apply the principles of successor liability. McCarthy v. Litton Industries, Inc., 410 Mass. 15 (1991). However, applying the law of successor liability can impose particular obligations upon the Baking Fund which relate to the administration of benefits. See Central States, Southeast and Southwest Areas Pension Fund v. Central Transport Inc., 861 F. Supp. 1402, 1413-14 (N.D. Ill. 1994).
The relationship between a plan and the persons or companies which provide the administrative services — those services that are essential to compliance with the dictates of ERISA — is under scrutiny. A state is preempted from interfering with any relationships that are otherwise regulated by ERISA. See General American Life Ins. Co. v. Castonguay, 984 F.2d 1518 (9th Cir. 1993). EMS is not a mere creditor. The contract was part of the cost of managing the plan. A determination of the scope and breadth of the obligations of the resulting or surviving employee welfare benefit fund necessarily relates to the administration of the plan. The functions contracted for under the Agreement with EMS are inherent to all ERISA plans.
Under ERISA, Congress sought to minimize the different obligations relating to the administration of plans in each state. Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11 (1987); Shaw v. Delta Airlines, Inc., 463 U.S. at 105. If this court were to determine that the Baking Fund was liable to EMS as a result of the agreement between the two employee welfare benefit funds, then it would be dictating the duties and responsibilities of the Bakeiy Fund’s administration and placing state limits upon the consolidation of ERISA plans. In addition, any award of damages would result in a drain of the fund’s resources that would otherwise go towards the administration of the fund as well as towards benefits.
For that reason, the claim brought against Marshall as trustee for the Bakery Fund for breach of contract is preempted by the extensive scope of ERISA.
B. Interference with Advantageous Business Relationship
EMS contends that Marshall improperly interfered with the contract between EMS and the Local 42 Fund. To prove a claim of interference with an advantageous business relationship, EMS must show: (1) a business relationship or contemplated contract of economic benefit; (2) the defendant’s knowledge of the relationship; (3) the defendant’s interference with it through improper motive or means; and (4) plaintiffs loss of advantage directly resulting from the defendant’s conduct. American Private Line Services, Inc. v. Eastern Microwave, Inc., 980 F.2d 33 (1st Cir. 1992) (applying Massachusetts law). As both parties point out, malice is no longer an element of the tort. United Truck Leasing Corp. v. Getlman, 406 Mass. 811, 812-15 (1990). Recovery is only possible if the Bakery Fund and EMS do not otherwise share a contractual relationship, as alleged by the first claim, because one may not tortiously interfere with a contract to which one is a parly. See Riseman v. Orion Research, Inc., 394 Mass. 311, 314 (1985).
*429 Lawsuits against an ERISA plan for torts committed by the plan are generally not preempted. See Mackey v. Lanier Collection Agency & Service, 486 U.S. 825, 833 (1988). The claim brought by EMS for tortious interference with an advantageous business relationship thus will not be preempted unless it otherwise relates to the disbursement of benefits or the administration of an ERISA plan. Pace v. Signal Technology Corp., 417 Mass. at 156.
Although this claim may tangentially impact upon the ERISA plan, the present action’s effect on the Bakery Fund is “too tenuous, remote, or peripheral a manner to warrant a finding that the law relates to the plan.” Shaw v. Delta Airlines Inc., 463 U.S. at 100 n.21. This action does not concern the payment of plan benefits. Furthermore, the claim does not directly or indirectly affect the administration of the plan. The claim focuses on events and behavior outside of the inner workings of the Bakery Fund and is unrelated to its administration. Therefore, the claim for tortious interference is not preempted by ERISA.
Absent preemption, there is no reason to grant either parties’ motion for summary judgment. Marshall concedes that there is evidence that there was some type of relationship between EMS and the Local 42 Fund. However, the parties disagree as to the extent of Marshall and the Baking Fund’s knowledge concerning the Local 42 Fund was bound by contract. See United Truck Leasing Corp. v. Getlman, 406 Mass. at 812. Both parties have offered proof contesting the issue of whether the Bakery Fund knew or had reason to know of the existence of the non-terminable nature of the relationship between EMS and the Local 42 Fund. This is a question for the finder Of fact. Thus, summary judgment is inappropriate. Cassesso v. Comm’r of Correction, 390 Mass. at 422.
II. Claims against Morin and Moran
EMS charges Morin and Moran with breach of contract and violating G.L.c. 93A. As indicated above, Morin and Moran are the trustees of the now defunct Local 42 Fund. The action by EMS seeks to hold the defendants Morin and Moran personally liable for their actions in discharging their responsibilities to the trust. ERISA already regulates the responsibilities of the trustees. For example, it imposes a fiduciary duty to the plan’s beneficiaries and makes them personally liable for a breach of that duty. See 29 U.S.C. §1104 & 1109.
EMS attempts to further regulate the trustees’ duties and obligations and thus the claims must be preempted. While EMS is correct that a similar holding by the Ninth Circuit is not binding upon this court, I find the reasoning to be persuasive. See General American Life Ins. Co. v. Castonguay, 984 F.2d 1518 (9th Cir. 1993). EMS would have me impose personal liability upon an ERISA trustee and add to the already stringent controls on plan trustees. This extra burden “affects the trustees’ conduct just as surely as direct regulation would.” Id. at 1522.
Increasing the exposure of ERISA trustees would undermine “(o]one of the key principles underlying ERISA [which] is that trustees must be devoted solely to the interest of plan beneficiaries.” Id. at 1523 (emphasis in original), citing 29 U.S.C. §1104(a)(1). A trustee would be encouraged to act in an overly cautious manner despite what may actually be warranted by the needs of the plan. In addition, ERISA plans would have difficulty finding qualified and willing trustees as “the specter of personal liability” scares them away. General American Life Ins. Co. v. Castonguay, 984 F.2d at 1522. This would result in the direct interference with the operation and administration of the plan.
This is not to say that plan trustees may act with reckless abandon. Any abuse of their positions maybe dealt with under the fiduciary duty to the plan beneficiaries or by the recognition of a federal basis of liability. See 29 U.S.C. §§1106, 1107, 1109(a); General American Life Ins. Co. v. Castonguay, 984 F.2d at 1522-24.
Therefore, the claims against Morin and Moran are preempted. The propriety of holding Morin and Moran liable on the contract can not be determined by this court but must be determined in the appropriate forum. In addition, the claim under G.L.c. 93A is preempted as it would impose a duty upon Morin and Moran to have acted in a particular manner in operating the plan, possibly in contravention of their explicit ERISA duties.
ORDER
For the foregoing reasons, it is ORDERED that the plaintiffs motion for summary judgment be DENIED. It is further ORDERED that the motion of defendant Marshall be ALLOWED in part and DENIED in part as is consistent with this opinion. It is further ORDERED that the motion of defendants Morin and Moran be ALLOWED.

ERISA defines an employee welfare benefit plan as:
[a]ny plan, fund or program... established or maintained by an employer, or by an employee organization, or both, to the extent that such a plan, fund or program was established or is maintained for the purposes of providing for its insurance or otherwise, (A) medical, surgical or hospital care or benefits in the event of sickness, accident, or disability, death or unemployment.
29 U.S.C. §1002(1).

Among its duties, EMS was required to “[a]dminister and coordinate enrollment process and issuance of plan material; [b]ill participating employers for contribution hours; . . . post hours to employee accounts; . . . [n]otify employees of eligibility; . . . [i]ssue claim forms to eligible employees; . . . [Represent interests of members to providers; . . . [and] [p]repare Summary Annual Report.” Plaintiffs Exhibit C.